IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **CRIMINAL NO.  CCB-16-0267** |
| v. | * | |
| | * | |
| **DANTE BAILEY, et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |
| | * | |
| | ******* | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR DAUBERT HEARING AND MOTION IN LIMINE TO LIMIT CELL PHONE EXPERT TESTIMONY AND DEMONSTRATIVES (ECF 1003)

Dante Bailey has moved to limit expert testimony about cell site analysis and has requested a *Daubert* hearing. Specifically, the Defendant argues that the testimony of FBI Special Agent Mathew Wilde should be limited because his report relies on the "assumption" that a cell phone connects to the closest cell tower and that a tower record is a reflection of a cell phone's actual location. ECF 1003, at 5–6. Relying on *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the defendant alleges that Agent Wilde "has not provided sufficient information underlying or explaining [his] methodology" and that his testimony is not reliable. *Id.* The defendant also claims that Agent Wilde's demonstratives are misleading in that the shaded areas on the map suggest tower coverage area as opposed to directionality of coverage. The Court should reject those arguments and deny the motion.

As discussed below, the defendant misunderstands the proposed testimony of Agent Wilde. Agent Wilde will testify that the cell phones in question were somewhere within the coverage area of the cell towers and sectors to which the billing records show they connected at particular times. He will offer an opinion about whether a given phone's location in a particular cell sector is

1

consistent or inconsistent with the phone's user being at the scene of the crime at the time of the offense. He will *not* testify that a cell phone was located at the exact address of a crime scene—or any other exact location within the general cell sector in question. And he will explain that the shaded areas on his demonstrative maps indicate the direction of the cell sector's coverage, not the exact radius of the coverage area. This proposed testimony is consistent with the science underlying cell site analysis and the case law addressing and admitting such testimony.

Courts have routinely held that expert testimony regarding cell site analysis is reliable and relevant evidence that should be admitted. In fact, Agent Wilde has already testified as an expert based on precisely the same methodology, using precisely the same types of demonstrative maps, in this very courthouse on numerous occasions. *See United States v. Montana Barronette* (CCB-16-0597); *United States v. Timothy McNeal* (CCB-16-0606); *United States v. Trevon Beasley* (GLR-17-0223); *United States v. Darius Wilder* (GJH-17-528); *United States v. Gerald Johnson* (JKB-16-0363); *United States v. Matthew Hightower* (GJH-15-0322); *United States v. Raymond Aigbekaen* (JKB-15-0462); *United States v. Harry Crawford* (MJG-15-0322); *United States v. Dontae Small* (JKB-16-0086). *Daubert* hearings were not held in any of those cases prior to Agent Wilde's testimony. In the very case the defendant cites—*United States v. Jovon Medley*, PWG-17-0242—Judge Paul Grimm held that nearly identical testimony and demonstratives should be admitted. The Court should deny the request for a *Daubert* hearing with respect to the anticipated testimony of Agent Wilde because he is an experienced law enforcement officer who is qualified to analyze historical call detail records and cell tower data, and his methodology for doing so is reliable and accepted.

### A. Cell Site Evidence

During the course of the investigation, law enforcement officers obtained historical cell

site location records maintained by service providers for cell phones belonging to Dante Bailey, Jamal Lockley, Sydni Frazier, and others. The service provider records include the dates, times, and durations of calls, as well as the cell towers and sectors of the towers used to transmit the calls. Agent Wilde entered data from these records into a computer mapping program, which populated the map with the locations of the relevant cell towers contacted by the phone. Agent Wilde then added the latitude and longitude of key locations in the case (for example, crime scenes and home addresses). The maps combine all this information and portray the cell tower locations, the sectors used, and the direction the sectors were facing when the phones used by the defendants made or received calls at key times before and after the murders at issue.

The government turned over the data underlying Agent Wilde's testimony—the cell site location records—in March and June 2017. Agent Wilde's draft reports (including the maps described above) were produced on October 4, 2018 along with an expert disclosure letter summarizing his opinions. *See* ECF 1003-1 (Expert Disclosure Letter); ECF 1003-2 (Draft Wilde Report, James Edwards Murder); ECF 1003-3 (Draft Wilde Report, Anthony Hornes Murder); ECF 1003-4 (Draft Wilde Report, Ricardo Johnson Murder). On March 1, 2019, the government provided final versions of Agent Wilde's reports and maps with minor revisions. *See* Exhibit 1 (Wilde Report, James Edwards Murder); Exhibit 2 (Wilde Report, Anthony Hornes Murder); Exhibit 3 (Wilde Report, Ricardo Johnson Murder).

Agent Wilde has worked for the FBI since November 2010 and has received over 300 hours of training in cell site analysis. As part of the FBI's Cellular Analysis Survey Team (CAST), he has provided cell record analysis, technological assistance, and training to local, state, and federal law enforcement including mapping and analyzing records. He has been qualified as an expert in the field of cell site analysis on at least 48 occasions in federal and state courts.

### B.   Legal Analysis: Rule 702 and *Daubert*

Under Rule 702 of the Federal Rules of Evidence, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if the: (a) expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) testimony is based on sufficient facts or data; (c) testimony is the product of reliable principles and methods; and (d) expert has reliably applied the principles and methods to the facts of the case.  *See* Fed. R. Evid. 702.

In *Daubert*, the Supreme Court provided a non-exhaustive list of factors for a court to evaluate when deciding whether to admit expert testimony: (1) whether the particular scientific theory can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community.  *See* 509 U.S. at 593–94; *United States v. Hassan*, 742 F.3d 104, 130 (2014); *see United States v. Crisp*, 324 F.3d 261, 265-66 (4th Cir. 2003) (quoting *Daubert*, 509 U.S. at 593–94).

In setting forth its non-exhaustive list of factors, the *Daubert* Court also recognized that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596.  *Daubert* expressed a high degree of confidence in the capacity of the adversarial system in general, and jurors in particular, to sort out expert testimony: "These conventional devices, rather than wholesale exclusion under an uncompromising 'general acceptance' test, are the appropriate safeguards where the basis of scientific testimony meets the

standards of Rule 702." *Id*.

### C. SA Wilde's Testimony Is Based Upon Sufficient Data and Is the Product of a Reliable Methodology that Has Been Applied Reliably to the Facts of this Case.

#### 1. Agent Wilde is qualified and his report is based upon sufficient data.

Agent Wilde is a highly trained Special Agent in the FBI's Cellular Analysis and Survey Team (CAST). He has received training from cellular service providers, has worked on hundreds of cases involving thousands of hours of practical experience analyzing historical call detail records, and has been qualified at least 48 times as an expert in the field of cell site analysis. Moreover, Agent Wilde will explain that the data relied upon to formulate his opinions (the phone company records and cell tower location lists) are routinely relied upon, not just by law enforcement, but also by the service providers themselves. Agent Wilde will testify about how cellular networks operate and why the networks need to know the general location—specifically the cell tower and sector being used by the phone—to connect incoming and outgoing calls.

#### 2. Cell site analysis constitutes a reliable methodology.

The defendant argues that Agent Wilde's testimony is based on faulty assumptions. ECF 1003, at 5–6. This is incorrect. Agent Wilde will testify based on well-founded information regarding how cell phones work. As discussed above, he will not attempt to overreach with respect to the conclusions to be drawn from the call detail records he reviewed.[1] In short, he will

---

[1] For example, the government expects Agent Wilde to explain (1) that cell phones (when 'on') constantly scan their environment looking for the best signal from the tower; (2) the best signal generally comes from the tower that is closest to the phone or closest in its direct line of sight; (3) the tower with the best signal is the one that the handset will use for service; this is the serving cell and will be used to make and receive calls; (4) the phone 'sees' other towers around the serving cell and will constantly measure those signal strengths; (5) however, the phone will not randomly reselect to an adjacent tower unless the tower is on its 'neighbor list' which is controlled by the network service provider and allows the network to accurately manage and

5

provide exactly the type of testimony and will rely on the very same methodology that courts have found reliable under Rule 702.

Courts have routinely admitted testimony regarding cell phone technology and the analysis of cell site records to determine the general area where cell phones are located when calls are made and received. This is not surprising, as the specialized knowledge on which such testimony is based—how cell phones and cell towers work—is well accepted in the scientific community.

Recently, in *United States v. Jovan Medley*, Criminal No. PWG-17-0242, Judge Grimm held a *Daubert* hearing to determine the admissibility of cell site analysis by a different FBI Special Agent and member of the FBI's CAST team. ECF 1003-5. Judge Grimm noted that "[s]tate and federal law enforcement officers have long used the historical records of cell phone use maintained by cellular phone companies to determine the approximate location of a cell phone at a particular time and place, and both state and federal courts frequently have admitted this evidence." ECF 1003-5, at 3. Judge Grimm concluded that "provided that the sponsoring witness has the qualifications to explain the process of how the historical billing records were used to approximate the location of the cell phone, including the strengths and limitations of the particular method used to do so . . . , there is sufficient evidence that these methods are accurate enough and well accepted enough within the appropriate fields of science, technology and specialized knowledge to allow admissibility." *Id.* at 14. He went on to approve virtually identical testimony and demonstrative maps used by the FBI agent in the case. *Id.* at 15–17.

---

control the subscribers; (6) as the phone moves, it will choose a new serving cell based on signal strength and neighbor list; if this occurs while the phone is in a call, the phone will 'handoff' the call to the next cell site/sector; (7) therefore some service providers show a 'beginning cell site' (call originating) and an 'ending cell site' (call terminating) in their records; and (8) as a general rule, most towers (depending on the environment) have a radius of approximately one or two miles (although greater or less distances are also common).

6

Numerous other federal courts have concluded that cell site analysis is reliable and admissible. *See United States v. Jones*, 918 F. Supp. 2d 1, 5–7 (D.D.C. 2013) (noting that "the use of cell phone location records to determine the general location of a cell phone has been widely accepted by numerous federal courts" and holding that the FBI agent's testimony was "based on reliable methods and principles" and that a *Daubert* hearing was unnecessary); *United States v. Schaffer*, 439 Fed. Appx. 344, 347 (5th Cir. 2011) (concluding that the field of historical cell site analysis was reliable because it had been tested and accepted); *United States v. Hill*, 818 F.3d 289, 298 (7th Cir. 2016) (affirming the admission of expert testimony in the area of historical cell site analysis and noting that "[h]istorical cell-site analysis can show with sufficient reliability that a phone was in a general area, especially in a well-populated one"); *United States v. Howard*, 2017 WL 2662469, *3 (C.D. Cal. 2017) (denying a motion to exclude and a request for a *Daubert* hearing and noting that the "science is well understood"); *United States v. Eadey*, 2013 WL 4680527, *5 (D.S.C. 2013) (holding, after hearing, that the FBI special agent's proposed expert testimony on cell site analysis was "the product of reliable principles and methods" that have been "reliably applied … to the facts of this case" and relevant in "aiding the jury in understanding the use of cell phone technology and determining facts in issue"); *United States v. Porter*, 2016 WL 538456 at * 3 (E.D. La. 2016) (stating that proposed "historical cell site analysis at issue satisfies the *Daubert* reliability test" and finding no pretrial evidentiary hearing necessary); *United States v. Benford*, 2010 WL 2346305 at * 1 (N.D. Ind. 2012) (denying defense motion to exclude the testimony of the government's expert witness); *United States v. Allums*, 2009 WL 806748 at * 1-2 (D. Utah 2009) (finding proposed FBI agent's testimony regarding the location of the cell tower to which a cell phone connected when placing a call "reliable and relevant" and denying a motion to exclude his testimony after a *Daubert* hearing).

For the reasons set forth in these cases, the proposed testimony of Agent Wilde in this case is reliable and should be admitted.

### 3. The methodology was applied reliably to the facts of this case.

Cell site and sector analysis does not does not reveal the exact location of a cell phone, but rather shows the general area in which the phone was located based on the cell tower location and the sector of the tower used to transmit the call. Agent Wilde will explain that when certain calls were made, the defendants' phones connected to specific cell towers and sectors. The cell tower locations and the direction the sectors are facing will be demonstrated in map form and will show their relationship to relevant addresses in this case. Such testimony and demonstratives fall squarely within the established parameters of historical cell site analysis. They entail a straightforward application of a reliable and well-accepted methodology to the call detail records at issue in this case.

### D. Agent Wilde's Testimony Is Relevant.

Agent Wilde's cell site analysis is unquestionably relevant because it is probative as to whether or not the defendants' cell phones were in the general area of the murders at issue in this case at the relevant times. It will assist the jury in making appropriate, reasonable inferences as to whether the defendants were present at the scene of the crime.

### E. A Hearing Is Not Necessary To Resolve the Defendant's *Daubert* Motion

"[T]he law grants a district the same broad latitude when it decides how to determine the reliability of expert testimony as it enjoys in respect to its ultimate reliability determination." *United States v. Beasley*, 495 F.3d 142, 150 (4th Cir. 2007) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)). It is correct that under *Daubert*, a court should not admit expert testimony merely because previous courts have done so. Rather, *Daubert* calls upon trial courts to conduct

their gatekeeping function in light of the continuing development of science. At the same time, nothing in *Daubert* or in its progeny calls upon a trial court to conduct fresh *Daubert* hearings on an hour-by-hour or minute-by-minute basis.

The defendant does not indicate why the *Daubert* hearing conducted in *Medley* should set a precedent against the numerous instances in which this relatively common testimony has been admitted without a *Daubert* hearing. *Daubert* does not provide a basis for opposing parties to secure routine depositions every time an area of opinion testimony is conducted. The purpose of a *Daubert* hearing, rather, is for a trial court to conduct its gate-keeping obligation on the subject of threshold reliability. The reliability and propriety of this proposed evidence is clear from the case law and from the prior instances in which this very agent has already testified. Even *Medley* accepted nearly identical testimony by an agent from the same FBI CAST team. Accordingly, there is simply no need for a *Daubert* hearing in this case.

### F. The Government Has Complied with Rule 16

Contrary to the defendant's claim, the government has met—and likely exceeded—its discovery obligations under Federal Rule of Criminal Procedure 16. The expert disclosure included Agent Wilde's reports and maps, provided his opinions, described his methods, and set forth his conclusions. Moreover, to the extent that the defense believes it is entitled to more detail, this memorandum should serve as a supplemental disclosure under Fed. R. Crim. P. 16 concerning this proposed expert opinion testimony.

Respectfully submitted,

Robert K. Hur
United States Attorney

By: _____/s/_____

                                                Christina A. Hoffman
                                                Lauren E. Perry
                                                Assistant United States Attorneys
                                                36 S. Charles Street, 4th Floor
                                                Baltimore, Maryland 21201
                                                (410) 209-4800

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on March 11, 2019, a copy of the foregoing Motion in Limine was electronically filed with the Clerk of Court via CM/ECF and thereby served on all counsel of record.

                ___/s/_____
                Christina A. Hoffman
                Assistant United States Attorney